**HYPOLITE BRINN and OSCAR HERNANDEZ AGUIAR,**
Plaintiffs

v.

**CHARLES F. WINTER, Acting Commissioner of Finance;
CLARENCE A. BRYAN, Tax Assessor;
MUNICIPALITY OF ST. THOMAS AND ST. JOHN,**
and

**EARLE H. THOMAS, Sheriff and Agent for Collection of Taxes,**
Defendants

Civil No. 368 - 1953

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

December 31, 1954

*See, also, 126 F. Supp. 902*

FRANCISCO CORNIERO, Esq., St. Thomas, Virgin Islands, attorney of record, and FRANCISCO PONSA FELIU, and JUAN NAVARES SANTIAGO, Esq., of counsel, *for plaintiffs*

CYRIL MICHAEL, United States Attorney, Virgin Islands, *for defendants*

MOORE, *Judge*

Plaintiffs, Hypolite Brinn and Oscar Hernandez Aguiar, have brought action for a declaratory judgment and to enjoin the collection of trade taxes against three officers of the Government of the Municipality of St. Thomas and St. John, to wit, Louis Shulterbrandt, Commissioner of Finance, Clarice A. Bryan, Tax Assessor, and Earle H. Charles, Sheriff and Agent for Collection of Taxes.

Plaintiffs were represented by Francisco Corneiro, Esq., attorney of record, and by Francisco Ponsa Feliu, Esq., and Juan Navares Santiago, Esq., of counsel. The then United States Attorney, Cyril Michael, appeared for defendants.

Upon motion of plaintiffs, Charles F. Winter, Acting Commissioner of Finance was substituted as party defendant replacing Louis Shulterbrandt, former Commissioner of Finance.

Motion for preliminary injunction against defendants was granted on November 16, 1953, upon the filing of an undertaking in the amount of $20,000 by the plaintiffs.

The parties with counsel appeared before this court for a pre-trial conference on February 8, 1954, at which time the issues involved in the case were outlined, to wit: the Government claiming that (1) plaintiff Brinn sold the cigarettes locally to Antimono, C. A. of Venezuela through his agent in St. Thomas, Oscar Hernandez, and (2) the unpacking, printing and repacking operations of plaintiff Hernandez made the transaction a local transaction and, therefore, subject to the trade tax.

107

The amount of taxes assessed and as contained in the statement of the Assistant Commissioner of Finance, Ernest D. Sasso, dated February 23, 1954, is not in dispute; the liability of plaintiffs under the Trade Tax Law of 1953 to pay same being the only question.

At the second pre-trial conference held on June 11 and 12, 1954, an agreed statement of facts was arrived at between the parties, who then agreed to submit the case on briefs. The facts of the case as agreed and stipulated to by all the parties are as follows:

"That the plaintiffs in this action are residents of the Municipality of St. Thomas and St. John and are both engaged in business in this Municipality;

"That this lawsuit against the Municipality revolves around certain transactions, all of which are similar and consist of various shipments of cigarettes into the Municipality;

"That the shipment of cigarettes were imported by plaintiff Brinn in his own name and then turned over to plaintiff Hernandez for the purpose of preparing them for exportation by the said Hernandez to Antimono, C. A., his principal, in Venezuela, along with other cigarettes received from the United States by Hernandez in St. Thomas for preparation for exportation to Antimono in Venezuela.

"That plaintiff Hernandez, before shipment to his principal in Venezuela, opened each case of cigarettes; then opened each carton of cigarettes, took out each pack of cigarettes, and from each pack of cigarettes he removed the cellophane wrapping and the red string from around the cigarettes; and that upon each pack of cigarettes printed the name "Antimono, C. A., Venezuela" as per sample marked plaintiff's exhibit 1. This was done for the purpose of making possible the importation of the cigarettes into Venezuela under the law of that country as referred to in paragraph twelve herein below;

"That after having so printed the cigarettes, plaintiff Hernandez then rewrapped each pack of cigarettes back in cellophane with the red string, placed them in packages of 250 packs of cigarettes each, and then shipped, in his own name as exporter, the entire lot of cigarettes to the said Antimono, C. A., in Vene-

zuela; that the original packages of cigarettes as received by Brinn contained 500 packs each;

"That payment for the cigarettes was thereafter received by draft made out to and received by plaintiff Hernandez; that after receipt of the said draft payment was then made by Hernandez to Brinn, it being understood that payment would be made by Antimono, C. A., after the cigarettes were received by him in Venezuela from Hernandez.

"It is further stipulated that the plaintiff, Oscar Hernandez, acted as purchasing agent for the said Antimono, C. A., a merchant in Venezuela who deals in cigarettes there and, as such purchasing agent for said merchant in Venezuela, received the aforesaid cigarettes for the purpose of shipping them to Antimono, C. A., who sent for them in a chartered plane, chartered by the said Antimono, C. A., of Venezuela.

"It is further stipulated and agreed that the word 'received,' or any word used in this stipulation, does not stipulate where delivery was made — that question being especially reserved for argument.

"Further, that as agent for the said Antimono, plaintiff Hernandez received the draft sent from Venezuela to St. Thomas, and out of the same paid the importer Brinn for the sale of the cigarettes to his principal, Antimono, C. A.

"It is further stipulated that plaintiff Hernandez is unable to purchase Chesterfield and Lucky Strike cigarettes to be sent to him in St. Thomas in his own name.

"It is further stipulated and agreed that plaintiff Brinn is an importer of all types of cigarettes including Lucky Strike and Chesterfield, and that Brinn is also an exporter of cigarettes.

"It is further stipulated and agreed that the section of the law of Venezuela, as presented in evidence as defendant's exhibit 1, is the law of Venezuela.

"It is further stipulated and agreed that the interpretation of this law is that cigarettes may not be imported into Venezuela unless they are, prior to their importation, stamped with the name of the importer and the name of the country Venezuela.

"It is further stipulated and agreed that plaintiff Hernandez is a licensed printer in the Virgin Islands, and that this printing of cigarettes for Antimono, C. A., is the only printing he does in the Virgin Islands, and that the machinery of the printing plant is the property of Antimono, C. A.

"It is further stipulated and agreed that the said Antimono, C. A., of Venezuela is not licensed to do business in the Virgin Islands.

"It is further stipulated and agreed that Mr. Darwin Creque's letter dated September 18, 1953, and addressed to Mr. Louis Shulterbrandt, former Commissioner of Finance, be presented as plaintiff's exhibit No. 2.

"It is further stipulated and agreed that as a result of the investigation referred to in plaintiff's exhibit 2, paragraphs two and three, Mr. Felipe Rincon, President-Manager of Antimono, C. A., of Venezuela, came to St. Thomas, met plaintiff Brinn through plaintiff Hernandez, and both Rincon and Brinn entered into an agreement by virtue of which Brinn would import cigarettes in his own name into St. Thomas for Antimono, C. A., in Venezuela, to be turned over to plaintiff Hernandez, Antimono's agent in St. Thomas, for the purpose of having them prepared for exportation to Antimono, C. A., in Venezuela."

On the basis of these facts, the plaintiffs claim that they are exempt from the payment of any tax on the transactions involved by virtue of the proviso clause of section 3(a) of the Trade Tax Law of 1953, (Ordinance Mun. Council St. T. and St. J.) Bill No. 264, approved July 6, 1953. Defendants contend that plaintiff Brinn is liable for the trade tax on these transactions upon consideration of sections 2 and 3(a) in their entirety. These sections of the law provide as follows:

"Section 2. Beginning July 1, 1953, there shall be levied upon, collected from, and paid by persons, firms, partnerships, associations and corporations conducting trade or business in the Municipality of St. Thomas and St. John, a tax to be known as the Trade Tax and to be computed in proportion to the extent of the trade carried on or of the business done, as hereinafter defined.

"Section 3(a). The extent of trade or business carried on by persons trading in articles, goods, merchandise or commodities, excepting those especially taxed, shall be measured by the total value of such items brought into the Municipality for disposition in the course of trade or business (which value is defined in section 3(b) hereof), and the amount of the trade tax shall be a per-

110

centage of said value determined according to the following schedule:

I. Cigars, cigarettes and tobacco
............ 5%
(Rest of Schedule omitted)

"Provided, That the value of articles, goods and merchandise and commodities disposed of in the course of export trade to purchasers who shall take delivery and actual possession outside of the Virgin Islands of the United States shall be excluded from the calculation of the Trade Tax."

The Municipality, admitting that the law does not purport to tax either imports or exports but merely trade or business done locally in the Municipality, claims that the transactions by plaintiffs Brinn and Hernandez amount to such local trade or business as contemplated by the Trade Tax Law and, therefore, are taxable under said law.

Plaintiffs, on the other hand, contend that their cigarette transactions are not local transactions but come within the exemption specifically provided for by the law for export business. Plaintiffs introduced in evidence, as Exhibit No. 2, a letter dated September 18, 1953, from Darwin Creque, former Tax Assessor, to the then Commissioner of Finance, Louis Shulterbrandt, on the subject of their cigarette transactions. Plaintiffs point out that their proposed operations were made known to the authorities who agreed that they were tax exempt and that on this understanding they continued to carry on their business.

In addition, plaintiffs contend that their cigarette transactions are within the protection of the commerce clause of the Constitution of the United States, Art. 1, § 8, cl. 3 (prec. 1 V.I.C.), and that, therefore, the Municipality cannot lawfully tax them. Plaintiffs argue that the transactions in question involved export sales of cigarettes, that these cigarettes were at all times in the flow or stream of inter-state and foreign commerce, being committed to ex-

111

portation from the moment of their arrival in the Municipality, and that they were in fact exported, none ever being sold or disposed of on the local market. Therefore, they maintain that the cigarettes are not subject to the trade tax.

Defendant denies that the tax is a violation of the commerce clause, claiming that the cigarettes came to rest within the Municipality and that the operations performed in the Municipality with respect to these cigarettes amounted to local business, thereby making the cigarettes taxable by the Municipality.

First, let us review and analyze the facts of the case. Antimono, C. A. of Venezuela buys Lucky Strike and Chesterfield cigarettes through plaintiff Brinn of this Municipality. The cigarettes are shipped from the United States to Brinn in St. Thomas and on arrival are committed for export to Antimono, C. A. in Venezuela. However, before exportation to Venezuela the cigarettes are turned over to plaintiff Hernandez, the local agent of the purchaser, Antimono, C. A., and under Hernandez' supervision they are "prepared" for shipment to Venezuela. This preparing consists of opening the cases of cigarettes, unwrapping the individual packs, printing the name of Antimono, C. A. on each pack, and then rewrapping each pack as before and finally repacking the shipment in smaller packages for entry into Venezuela. The cigarettes are then sent by chartered plane to Venezuela, their original destination from the time they left the United States, and upon receipt of the cigarettes in Venezuela, and not until then, Antimono, C. A. makes payment to Brinn through Hernandez.

The Municipality admits that the cigarettes were brought in by Brinn for Antimono, C. A., and that they actually were sent to Antimono, C. A., in Venezuela. However, the Municipality argues that when Brinn turned over the said

cigarettes to Hernandez in St. Thomas the shipment lost its character in interstate and foreign commerce, becoming a part of the general mass of property in the Municipality, and further, that when Hernandez received these goods he did so as the agent of Antonio, C. A., thereby causing a "delivery" of the goods to be made within the Virgin Islands, and thus taking the transaction out of the exemption provisions of the Trade Tax Law. The Municipality, further, argues that the printing and repacking operations carried on by Hernandez for Antimono, C. A., and at Antimono's expense, changed the nature of the transaction from export business to a local business.

The agreed facts show that the cigarettes brought in by plaintiff Brinn were committed for export to a foreign country from the time they arrived in St. Thomas, and that Brinn turned them over to Hernandez pursuant to his contract with Antimono, C. A., for the sole purpose of preparing them for export to Venezuela. Plaintiffs admit that Hernandez could not import these cigarettes in his own name and, also, that they could not be entered in Venezuela unless the name of the importer was printed on each pack and they were put up in smaller packages. Plaintiffs contend that these operations by Hernandez, which were paid for by Antimono, C. A., were entirely in furtherance of the movement of the goods in foreign commerce; that the cigarettes remained in St. Thomas only long enough to have them prepared for entry into Venezuela and were picked up here by a plane chartered by Antimono, C. A., as soon as they were ready. Plaintiffs argue that there was a continuous flow of the cigarettes in foreign commerce and that this stop-over in St. Thomas was a mere "halt" in the interstate movement for the furtherance and facilitation of that commerce. Plaintiffs further point out that Hernandez did not and had no power to divert the cigarettes to the local market, since it would have

been a breach of contract for either party to dispose of the cigarettes locally or to divert them in any way from shipment to Venezuela. Plaintiffs, also, contend that there was "delivery and actual possession outside the Virgin Islands", as called for by the exemption clause of the statute, for only upon arrival and "delivery" of the cigarettes in Venezuela did Antimono, C. A., become liable for payment thereof, and thus, Antimono, C. A., did not take delivery until the cigarettes reached Venezuela.

■ There is no question raised as to the power of the Municipality to tax goods brought into the Municipality. That was determined by the H. I. Hettinger & Co. v. Municipality of St. Thomas, 2 V.I. 509, 3 Cir., 187 F.2d 774. The question here is whether the cigarettes brought in by plaintiff Brinn for export to Venezuela were taxable by reason of their "stay" or "halt" in St. Thomas.

There is a long line of Supreme Court cases on the question of when a halt in the movement of goods in interstate commerce subjects them to local taxation. Plaintiff and defendant each cite the leading cases in the field as supporting or distinguishable from their respective positions. We might summarize the principal cases.

In Coe v. Town of Errol, 1886, 116 U.S. 517, 6 S. Ct. 475, 29 L. Ed. 715, the question was whether timber originating in one state and awaiting transportation to another state is already in interstate commerce and immune from state taxation. The court held that they were still a part of the general mass of property in the state until actually shipped or started on their way in interstate commerce and were, therefore, taxable.

In General Oil Co. v. Crain, 1908, 209 U.S. 211, 212, 28 S. Ct. 475, 482, 52 L. Ed. 754, oil destined for Arkansas, Mississippi and Louisiana was brought into Memphis, Tennessee and stored there for division and distribution having "reached the destination of its first shipment". This

was held to be for the business purposes and profits of the Oil Company and, therefore, taxable on the ground that Memphis had become a "depot" for the oil which was "brought to rest" in the state, and that that was "no mere halt" in transportation.

Next is the case of Bacon v. People of State of Illinois, 1913, 227 U.S. 504, 33 S. Ct. 299, 303, 57 L. Ed. 615, where a tax on grain moving from West to East was involved. The grain was shipped from western states under contract for transportation to New York and other eastern cities. While in transit, it was purchased by one Bacon with the understanding that it would be disposed of as previously contracted for. The grain was then removed from the train at Chicago by Bacon for the purpose of weighing, cleaning and grading said grain before shipping further east to its original destination. Although there was no change of destination or ownership of the grain, it was held to be "at rest" and therefore, taxable. The court pointed out that the grain was within Bacon's power of disposition, it being "in his possession, with the control of absolute ownership," and that it was held off in Chicago for his benefit at his direction.

In Stafford v. Wallace, 1922, 258 U.S. 495, 42 S. Ct. 397, 402, 66 L. Ed. 735, the movement of cattle across the country was involved and it was held that "stockyards are not a place of rest or final destination" but a "throat" through which the current of commerce flows. The court held that the transactions of middlemen which occur there are "only incident to this current of traffic from West to East" and "cannot be separated from the movement to which they contribute and necessarily take on its character."

In the case of the Champlain Realty Co. v. City of Brattleboro, 1922, 260 U.S. 366, 43 S. Ct. 146, 149, 67 L. Ed. 309, the movement of timber was again involved. Logs on

their way downstream from one state to another were held back at the boom in the river during the time when the river was frozen. The court held that the real continuity of transportation was not broken, that it was a "mere halt" in transportation and was not for the owner's beneficial purpose, but of necessity for the safety of the logs in transportation. The court pointed out that their final journey had begun and that prior to the halt they had actually been moving in commerce and, therefore, were not taxable by the state. The court further pointed out that " . . . in such cases interstate continuity of transit is to be determined by a consideration of the various factors of the situation. Chief among these are the intention of the owner, the control he retains to change destination, the agency by which the transit is effected, the actual continuity of the transportation, and the occasion or purpose of the interruption during which the tax is sought to be levied."

That case was followed by the case of Hughes Bros. Timber Co. v. State of Minnesota, 1926, 272 U.S. 469, 47 S. Ct. 170, 171, 71 L. Ed. 359, in which "The timber company (of Minnesota) was under contract to float the timber down from the place of piling on the Swamp river and deliver it as promptly as possible. The paper company (of Michigan) by payment of $3 a ton had acquired a qualified ownership in the timber even before it was segregated and put to float. Had the timber company or someone claiming under it attempted to stop the drive after it had begun, and interfered with the passage of the timber down the Swamp or Pigeon river, it would have been a breach of the contract of sale . . . The change in the method of transportation (subsequently arranged for) by floating to carriage on a vessel did not affect the continuity of the interstate passage . . . " The court observed that "The delays in the continuity of movement were only incidental to the journey and the necessary change

116

in the mode of transportation . . . (of) the logs," and held that, since the owner could not under his contract, divert the logs from interstate commerce once the journey had started, and the logs were in actual transit, they were not taxable.

In the case of Carson Petroleum Co. v. Vial, 1929, 279 U.S. 95, 49 S. Ct. 292, 73 L. Ed. 626, oil was transported by rail to the port of shipment where it was stored until the ships arrived. Despite the court's decision in General Oil Co. v. Crain, supra, the court held that the oil was not taxable since the break in transit was for storage awaiting further transportation and the oil was not treated in any way nor was any of it sold locally.

In the case of State of Minnesota v. Blasius, 1933, 290 U.S. 1, 54 S. Ct. 34, 37, 78 L. Ed. 131, again involving the movement of cattle, the court ruled that while by reason of a break in transit, property may come to rest within a state and become subject to the power of the state to impose a tax, the mere interruption of transit is not determinative of whether the goods are subject to local taxation. The question is rather what is the purpose of the break in transit and for whose benefit was it. The court concluded that "The question is always one of substance, and in each case it is necessary to consider the particular occasion or purpose of the interruption during which the tax is sought to be levied. . . . The mere power of the owner to divert the shipment already started does not take it out of interstate commerce if it appears 'that the journey has already begun in good faith and temporary interruption of the passage is reasonable and in furtherance of the intended transportation.' "

The trend, therefore, of the later decisions has been to preserve the free movement of goods in interstate and foreign commerce without the hampering effects of local tax burdens.

117

The whole question of tax liability in this case, therefore, turns on what was the purpose of turning the cigarettes over to Hernandez and whether this break in transit amounted to a "delivery" under the law.

■-■ Without the printing of "Antimono, C. A.," on the individual packs and the rewrapping of the packages, the cigarettes could not have entered Venezuela. But the printing and rewrapping did not in any way change the cigarettes themselves. In fact, the cigarettes were never touched; the seals on the individual packs were never broken. Moreover, the cigarettes were not held here or "stored" for any other purpose but for preparation for their continuation in transportation or movement in interstate and foreign commerce. It is the opinion of this court that the decisions of the United States Supreme Court cited above indicate that operations incidental to the movement of goods in interstate commerce take on the character of interstate commerce and acquire its immunity from local taxation. Stafford v. Wallace, supra. Also, the Supreme Court has held that mere interruption of transit does not of itself subject the goods to local taxation, the considerations being the necessity and purpose of the break in transit. State of Minnesota v. Blasius, supra. Therefore, in view of the purpose and necessity for the interruption of the transportation of the cigarettes to Venezuela, this court is of the opinion that the break in transit for preparation for entry of the cigarettes into Venezuela was for the mutual benefit of the purchaser and the seller, and for the facilitation and furtherance of the movement of these goods in interstate commerce. Further, the Court is of the opinion that the proviso clause of the Trade Tax Law of 1953 was written into the statute expressly for the purpose of making provision for such local breaks in transit and for exempting such goods from the trade tax.

The Government takes the position that delivery was made and actual possession taken in this jurisdiction by Hernandez, Antimono's agent, and argues that the fact that payment was not made to Brinn until Antimono, C. A., in Venezuela received the cigarettes is not controlling. The agreed facts show that Antimono, C. A., only became liable for payment upon the arrival of the cigarettes in Venezuela. If the cigarettes never reached Venezuela, Antimono, C. A., would not have been liable for payment to Brinn, despite the fact that the cigarettes had been turned over to Hernandez in St. Thomas for printing and repacking. The fact that the cigarettes were committed to be sent to Antimono, C. A., in Venezuela from the time they arrived in St. Thomas and that Antimono, C. A., became liable for payment only upon their arrival and delivery in Venezuela determine that the goods were disposed of in the course of export trade to purchasers who took delivery and actual possession outside the Virgin Islands and that, therefore, the transaction was within the exemption provided for by the statute.

The Municipality admits that if Brinn had brought in the cigarettes, stored them himself and later sold them directly to a buyer outside the Virgin Islands (which trade Brinn actually carries on without being taxed) the cigarettes would not have been taxable. It seems to the Court that if the cigarettes were not taxable under these circumstances, they are certainly not taxable under the circumstances of this case. For here, we have a clearer situation, to wit, the cigarettes are committed to outside sale even before they arrive in St. Thomas, they are not stored here pending a possible outside sale, as in the hypothetical situation (which would be more nearly "coming to rest" in the Virgin Islands) ; here, they are merely prepared for outside delivery to which they were already committed. Had Brinn imported the cigarettes for himself with no

119

commitment and then sold them to Hernandez in St. Thomas who thereafter sold them to Antimono, C. A., in Venezuela, the Government's position would be well taken, because the transaction between Brinn and Hernandez would then be clearly a local sale. But according to the facts in the case, this was not the nature of the transactions involved. The facts in this case clearly establish that the cigarettes were at all times destined for Venezuela and that transit did not end in St. Thomas as contended by the Government. The fact that Antimono, C. A., arranged and paid for the transportation does not change the fact that the contract called for delivery in Venezuela.

The Government also argued that the printing of Antimono's name on the cigarette packages by Hernandez established the passing of title to Antimono, C. A., here in St. Thomas. This argument is unsound for had the cigarette manufacturers themselves printed the name of Antimono, C. A., on the packages, as they do for some firms and importers, no one would argue that title to cigarettes passed to the purchasers even before the cigarettes left the manufacturers or the price of the same was paid.

■ The statute in question clearly intends that export sales of goods imported shall be exempt from the trade tax. The cigarettes which were sold by Brinn to Antimono, C. A., and which passed through the hands of Hernandez were at all times committed to export, and neither the seller nor the buyer or his local agent was free to dispose of the cigarettes locally. Furthermore, all of the cigarettes in question were actually sent to Antimono, C. A., who took delivery and actual possession of them only when they arrived in Venezuela and then, and then only, did he become liable to Brinn for the purchase price. The fact that Antimono's agent by agreement prepared them for delivery to Venezuela did not change the character of the goods or the time or place of delivery.

It is, therefore, the opinion of this court that the cigarette transactions of Brinn, Hernandez and Antimono, C. A., are not taxable under the Trade Tax Law of 1953, and a permanent injunction will be granted as prayed for by plaintiffs.

Order may be drawn in accordance with this opinion.