**PAN AMERICAN WORLD AIRWAYS, INC., Plaintiff**

v.

**THE DULY AUTHORIZED GOVERNMENT OF THE VIRGIN ISLANDS and the COMMISSIONER OF FINANCE, OF THE GOVERNMENT OF THE VIRGIN ISLANDS, Defendants**

Civil No. 271-1967

District Court of the Virgin Islands
Div. of St. Thomas and St. John

August 18, 1970

CHRISTIAN, *Chief Judge*

MEMORANDUM

Pan American World Airways, Inc. seeks declaratory and injunctive relief, pursuant to 5 V.I.C. §§ 1261–1272, from the application of the Virgin Islands Gross Receipts Tax, 33 V.I.C. §§ 41 and 43, on the grounds that, (1) the statute properly construed does not apply to it, and (2)

if applicable, is repugnant to the Commerce and Due Process Clauses of the United States Constitution.

Defendants, the Government of the Virgin Islands and the Commissioner of Finance, in their answer, deny that Pan American is entitled to declaratory or injunctive relief, allege that the gross receipts tax "is apportioned to plaintiff's activities in the Virgin Islands," and that Pan American, despite demand, has failed to pay the tax. They request a judgment dismissing the complaint and assessing costs against the plaintiff.

The facts are briefly:

Pan American operates regularly scheduled flights to and from the Virgin Islands. It operates ticket offices in Charlotte Amalie and Christiansted, at which tickets for flights to and from various points in the Virgin Islands, as well as flights wholly outside the Virgin Islands are sold. Tickets on Pan American flights are also sold in the Virgin Islands by agencies and other airlines who receive a commission from Pan American for such sales. Payment for the carriage of cargo and excess baggage for such flights is likewise received. Pan American operates ticket counters and office space at the airports in St. Thomas and St. Croix, at which such transactions are carried on. It further maintains facilities for the servicing of planes arriving and departing in and from the Virgin Islands, and conducting communications activities for the operation of its flights, loading and unloading of passengers, baggage and cargo.

Pan American employed 95 persons on a payroll of $555,954 in 1967, who were engaged in selling space on its flights, unloading and loading passengers and cargo, servicing its aircraft while on the ground and conducting all other necessary activities for the promotion and execution of its business in the Virgin Islands. It collected $2.5 million from the sale of tickets in the Virgin Islands in 1966.

The pertinent portions of the statute under attack, 33 V.I.C. §§ 41 and 43, are:

§ 41. Imposition of taxes

Beginning July 1, 1959, there shall be levied upon, collected from and paid by persons, partnerships, firms, corporations or other associations engaged in trades or other business in the Virgin Islands, the taxes hereinafter provided; such taxes to be computed in proportion to the extent of the trade carried on or of the business done, as set forth in the remaining sections of this chapter.

§ 43. Rate and base of gross receipts tax; exemption; definition

(a) All persons engaged in business including those trading in articles, goods, merchandise or commodities shall report their gross receipts and pay a tax of two percent on the gross receipts of such business . . . .

(b) The term "gross receipts" as used in this title shall mean all receipts, cash or accrued, of the taxpayer for services or derived from trade, business, commerce or sales, and the value accruing from the sale of tangible personal property or services, or both, including rentals, fees and other involvements, however designated, without any deduction on account of the cost of the property sold, the cost of materials used, labor cost, royalties, taxes, interest or discount paid, or any other expenses whatsoever.

\* \* \*

█ The statute establishes a comprehensive taxation plan over all receipts from business in the Virgin Islands. It is not addressed to any particular type of business activity, such as transportation, but rather is a broad-based levy falling equally on interstate and domestic business activity. As such, the Court should give the construction to the terms of the statute the meaning which is clearly intended by the Legislature and which will best effectuate the legislative purpose expressed.

█ █ Proper construction requires the reading of section 43(b), defining the gross receipts to be taxed, with section 41, defining the proper subjects of the tax. Under section 41, any person or organization who engages in "trades or other business in the Virgin Islands" is sub-

ject to the tax, unless specifically exempted. "Other business" necessarily includes all types of business activity not specifically mentioned, for

Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language .... 1 V.I.C. § 42.

■ Section 43(b) of Title 33, in language as plain as can be fashioned in the English language, defines "gross receipts" to comprehend "all receipts derived from sales and the value accruing from the sale of tangible personal property or services . . . ." Therefore, unless Pan American can show that its activity is not "business in the Virgin Islands," and that the revenues received from ticket sales and payment for the carriage of cargo are not receipts from such business under section 43, they should be taxed.

■ Is Pan American doing business in the Virgin Islands within the meaning of the statute? Clearly it is. Pan American operates ticket sales offices which handle transactions in the Virgin Islands for the transportation of passengers, cargo, baggage, etc., to and from all parts of the world. It leases space in the cities and at the airports and hires personnel on a regular basis to perform these tasks and all other forms of activity such as advertising, promotion, loading and unloading cargo, servicing planes, etc., in furtherance of its operations. Pan American, however, maintains that it does no "business in the Virgin Islands."

■ Rather, it asks this Court to accept its definition of its "business" as being "flying," completely and exclusively, and to ignore whatever other activities it may perform. It seeks to escape taxation by claiming that its only activity is flying, therefore in the sky and outside the ambit of the statute's definition of "business" in the Virgin Islands. This Court refuses to accept such a defi-

89

nition. Leaving the constitutional issues aside, momentarily, it finds that the activities carried on by Pan American in the Virgin Islands in its offices, at the airport, etc., constitute business in the Virgin Islands within the clear meaning of the statute, and that the receipts from the sale of tickets are receipts from such business as defined in section 43(b); that the legislative intent was clearly to cover such activity; that it is reasonable to consider such activities within the ambit of the statute; and that to construe the statute as Pan American requests would not only be a constrained and distorted construction, but contrary to the legislative intent clearly expressed in the statute. If Pan American is to be saved from this impost, absolution must come from some quarter other than the statute itself.

Having concluded that Pan American's activities readily fall within the ambit of the statute, I am confronted by the airline's alternative position that, as so construed, the statute offends the United States Constitution and is therefore invalid as applied to Pan American.

 The threshold constitutional question is whether Pan American has sufficient contact with the Virgin Islands to give, as a matter of Due Process, jurisdiction to impose a tax. The Supreme Court of the United States has phrased this precondition to a valid tax as requiring sufficient income-producing activity to create a "nexus" or "minimum connection" between the activities sought to be taxed and the state. Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169 (1949); General Motors Corp. v. Washington, 377 U.S. 436 (1964); Northwestern Cement Co. v. Minnesota, 358 U.S. 450, 464, 465 (1959). Even if the mere operation of airplanes, limited to the receiving and discharging of passengers in the Virgin Islands, is insufficient to form the required nexus, Pan American's additional activities are more than adequate to satisfy this

test, e.g., its maintenance of sales offices, advertising and promotional personnel, ticket counters in leased areas in buildings in the cities and at the airports, etc. If the controlling question is whether "the state has given anything for which it can ask return," as stated by the Supreme Court in Wisconsin v. J. C. Penney Co., 311 U.S. 435, 444 (1940), the Virgin Islands has answered the question affirmatively: Pan American benefits from an atmosphere, maintained and fostered by the Virgin Islands, conducive to the tourist trade, a trade which particularly benefits Pan American. Moreover, as every other business in the Virgin Islands, Pan American benefits from the various services and protections accorded it under the police power of this territory.

 Though the Virgin Islands has jurisdiction and the power to tax, this power must be exercised so as not to burden interstate commerce. That Pan American's activity is interstate and foreign commerce and subject to federal jurisdiction cannot be questioned. But this fact is not in and of itself determinative of the issue. Braniff Airways v. Nebraska Board of Equalization and Assessment, 347 U.S. 590, 591–597 (1954). It is far too late in the day to contend that a tax falls merely because it is imposed on gross receipts from interstate commerce.

Historically, the Court had invalidated most attempts to tax interstate commerce in any form, on the basis that it was an invasion of the congressional authority to regulate interstate commerce, the feeling being that taxation is a form of regulation. Case of the State Freight Tax, 15 Wall 332 (1873); Philadelphia & Southern Steamship Co. v. Pennsylvania, 122 U.S. 326 (1887); Fargo v. Michigan, 121 U.S. 230 (1887). See also Lochart, Gross Receipts Taxes on Transportation, 57 Harv. L. Rev. 40 (1943) for an excellent survey of the treatment of gross receipts taxes by the Supreme Court historically.

Nevertheless, the Court early found ways of upholding these same taxes, if they were either in form not directly applicable to interstate commerce, or if they were properly apportioned so as to prevent cumulative multiple taxation. (Main v. Grand Trunk Railway, 142 U.S. 217 (1891) upheld a gross receipts tax which was apportioned by mileage; New York, Lake Erie & Western Railroad v. Pennsylvania, 158 U.S. 431 (1895) upheld the same tax invalidated in Philadelphia Southern when applied to the use of roadbeds of the railroads; Wisconsin & Michigan Railroad v. Pennsylvania, 191 U.S. 379 (1903) sustained another tax measured by gross receipts from local and interstate commerce because in form it was measured on the property and business of the railroad.)

To run afoul of the Commerce Clause, a tax must not merely fall upon, but actually "burden," interstate commerce.

█ █ A tax that discriminates against interstate commerce necessarily burdens that commerce. But the Virgin Islands statute under review is one of general application and falls evenly upon all business activity. It in no way discriminates against interstate commerce and clearly is intended to tax only business that occurs in the Virgin Islands. Port Construction Co. v. Government of the Virgin Islands, 359 F.2d 663 (3d Cir. 1966).

█ The second requirement is that a gross receipts tax imposed on interstate transactions must be fairly apportioned to the activities carried on in the taxing jurisdiction. This is a corollary to the postulate that a state tax cannot impose multiple burden on commerce. See Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 255, 256 (1938). Theoretically, fairly apportioned taxes could never impose multiple burdens on interstate commerce. However, recent interpretations of "apportionment" by the Supreme Court have undermined the

92

theoretical dove-tailing of these two tests. See Developments in the Law, 75 Harv. L. Rev. 953, 964 (1962). Accordingly, they must be applied independently.

█ █ As applied to gross receipts from transportation, apportionment has been construed to require that the tax reach only that part of the transportation that occurred within the taxing state. Id. at 257. For example, in Greyhound v. Mealey, 334 U.S. 655 (1948), a tax on the gross receipts from travel between points within New York State was upheld as apportioned to the number of miles traveled in New York, but invalidated as to the mileage traveled in neighboring states. The apparent rationale for this decision was the court's opinion that the neighboring states' power to tax the mileage traveled within their boundaries might result in multiple taxation, if New York were also permitted to tax those portions of the total mileage. But a formula based on mileage traveled within a state is not properly applicable to air travel. For instance, if Greyhound had involved air transportation rather than surface travel, there would have been no danger of multiple taxation by neighboring states. The use of air space over neighboring states, without more, would be insufficient contact to support taxation by those states. Since an air carrier cannot be taxed on the basis of mileage, it is inappropriate to use mileage as the standard for apportionment. Therefore, another standard must be found. In Northwest Portland Cement v. Minnesota, 358 U.S. 450 (1959), the court sustained a flexible apportionment formula based on sales, payroll and tangible property within the state of Minnesota. The three-factor formula permits the states greater latitude in apportioning receipts from interstate commerce in such a way as to permit multiple taxation. See Developments in the Law, 75 Harv. L. Rev., at 966, 967 (1962). In General Motors v. Washington, supra, the apportionment requirement

was further relaxed, possibly to the point of abandonment. The Washington statute levied a tax on the gross receipts derived from Washington wholesale sales of motor vehicles, parts and accessories. None of the taxed articles were manufactured in the state, and other contacts with the state were not extensive. Like Pan American, General Motors was also involved in some intrastate transactions. Like the Virgin Islands statute under review, the Washington statute did not purport to apportion General Motors' gross receipts from Washington sales by means of a single or multi-factor formula. Its tax fell on all receipts. But the court found that the total activities of General Motors within the state were sufficient to support such a tax, in the absence of proof that multiple taxation would result. The principles governing that case were stated as follows:

\* \* \*

A careful analysis of the cases in this field teaches that the validity of the tax rests upon whether the State is exacting a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation. For our purposes the decisive issue turns on the operating incidence of the tax. In other words, the question is whether the State has exerted its power in proper proportion to appellant's activities within the State and to appellant's consequent enjoyment of the opportunities and protections which the State has afforded. Where, as in the instant case, the taxing State is not the domiciliary State, we look to the taxpayer's business activities within the State, i.e., the local incidents, to determine if the gross receipts from sales therein may be fairly related to those activities . . . . 377 U.S. at 440, 441.

The court did not discuss the Due Process and Commerce Clause considerations separately. The court seems to have instead reduced the standard applied under the Commerce Clause to one quite similar to the standard derived from the Due Process Clause. See 377 U.S. at 450 (Justice Brennan dissenting). In General Motors, the

court did not apply a twofold test, asking first whether the taxed activities have sufficient relation to the taxing jurisdiction, and secondly whether the tax is fairly apportioned to those activities. The test apparently applied there combines these two questions into the single query whether the taxpayers' gross receipts from the sales activities in the state are fairly related to the taxpayers' business activities in the state. The question of multiple burden is then left to be answered separately.

 I conclude here, as I did above, that Pan American's contacts with the Virgin Islands are sufficient to justify a gross receipts tax. Furthermore, the tax imposed is proportionate to Pan American's "enjoyment of the opportunities and protections which the State has afforded," 377 U.S. at 441. The tax does not fall on all traffic to and from the Virgin Islands, but only on sales of tickets and agreements for transport of cargo consummated here. These sales are a fair measure of Pan American's local business activity. The activities of Pan American in the Virgin Islands that contribute to its ticket sales here are at least as great as those that contributed to General Motors' automotive sales in the State of Washington.

 Finally, there is no possibility of multiple taxation of these Virgin Islands ticket sales. The sale can occur in but one place, and other attempts to reach that transaction, such as a tax on departures or arrivals, would surely be invalidated. See United Airlines v. Joseph, 282 App. Div. 48, 121 N.Y.S.2d 692, aff'd without opinion, 307 N.Y. 762, 121 N.E.2d 557 (1953). In any event, it is incumbent on the taxpayer to prove the likelihood of multiple taxation, Northwestern States Portland Cement Co. v. Minnesota, supra, at 463; General Motors v. Washington, supra, at 449. Pan American has hardly suggested

such a possibility, let alone ventured proof that such a situation exists.

■ The three requirements of a valid tax under the Commerce Clause are met, i.e., that it be non-discriminatory, that it not give rise to multiple taxation and that it be fairly apportioned to local business activity. I find, therefore, that the application of this statute to Pan American's gross receipts from ticket sales and agreements for cargo shipments consummated in the Virgin Islands is unoffending under the Due Process and Commerce Clauses of the United States Constitution.