**JDS REALTY CORP., formerly known as WEST INDIES CORP., Plaintiff**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS and LEROY A. QUINN, Director of Internal Revenue, Defendants**

Civil No. 81-183

District Court of the Virgin Islands

Div. of St. Thomas and St. John

August 24, 1984

---

ARTHUR POMERANTZ, ESQ., St. Thomas, V.I., *for plaintiff*

J'ADA M. FINCH–SHEEN, Attorney General (Department of Law), St. Thomas, V.I., *for defendants*

LEROY A. MERCER, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for defendants*

CHRISTIAN, *Chief Judge*

## MEMORANDUM OPINION

In its present posture, this action for refund of excise taxes is before the Court on motion of plaintiff JDS Realty Corp. for summary judgment. On August 14, 1984, we entered an Order granting the motion insofar as said motion challenged the constitutionality of the subject "excise" tax. 33 V.I.C. § 42 (Supp. 1983). In all other respects plaintiff's motion was denied. We write now to clarify our ruling and its constitutional underpinnings.

### I

Plaintiff JDS Realty Corp. ("JDS") is a self-described "Virgin Islands corporation engaged in the wholesale distribution of liquor,

113

cigarettes, perfumes, and drugs." Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 1. The unopposed affidavit of Henry L. Kimelman, chairman of the board of plaintiff corporation throughout the relevant period, establishes, for present purposes, that during the 45-month period from January 1977, through September 1980, plaintiff corporation paid $2,046,137.86 in "excise" taxes pursuant to the mandate of 33 V.I.C. § 42.[1] Kimelman's affidavit further avers that said taxes were paid "on various goods primarily alcoholic beverages and tobacco products brought into the Virgin Islands from the United States and various foreign countries." Affidavit [of Henry L. Kimelman] in Support of Plaintiff's Motion for Summary Judgment at ¶ 8. Affiant further declares, upon personal knowledge, that "[n]o comparable tax was paid on goods purchased within the Virgin Islands, including rum manufactured on St. Croix." Id. at ¶ 9.

Plaintiff contends that 33 V.I.C. § 42 effectively violates the Commerce and Import-Export Clauses of the United States Constitution, U.S. Const. art. I, § 8, and art. I, § 10, respectively, and discriminates in favor of locally produced goods, and against goods brought into the Territory, in violation of § 4 of the Act of Congress of March 3, 1917 (Act March 3, 1917, Ch. 171, 39 Stat. 1132), and clause 1 of § 3 of the Revised Organic Act of 1954. 48 U.S.C. § 1561.

Defendant Government counters that the Commerce and Import-Export Clauses of the United States Constitution do not limit the inherent taxing power of the Government of the Virgin Islands, or do so only in ways not relevant for present purposes. Alternatively the Government argues that even if said clauses limit territorial powers of taxation, they do not preclude imposition of the challenged excise taxes, at least in part because, as defendant sees it, Congress has implicitly approved territorial collection of said tax. Finally, defendant contends that the challenged tax is impervious to attack on due process and/or equal protection grounds in that the promotion of local industry, defendant's proffered justification for the discriminatory taxing scheme embodied in 33 V.I.C. § 42, is a legitimate governmental objective.

For the reasons set out below we have concluded that the challenged excise tax violates both the Commerce and Import-Export Clauses

---

[1] By Memorandum and Order entered October 28, 1981, we held that a letter submitted by plaintiff to the Virgin Islands Commissioner of Finance on January 31, 1980, requesting refund of the subject taxes constituted a claim for refund sufficient to satisfy the prefiling requirements of 33 V.I.C. § 1692(a).

of the United States Constitution. Collection of said tax thus being impermissible whether the taxed "imports" are "foreign", or "domestic", we need not reach plaintiff's due process/equal protection challenge.[2]

## II

Plaintiff has not directed us, nor has our extensive research led us, to any case squarely and expressly holding that the Commerce Clause imposes upon the taxing power of this Territory the same limitations said Clause imposes upon the parallel powers of the several States. Still, the weight of authority overwhelmingly supports such a conclusion.

Both this Court and the Court of Appeals for the Third Circuit have repeatedly assumed the applicability of the Commerce Clause in scrutinizing various challenged actions of the territorial government. See, e.g., Port Construction Co. v. Government of the Virgin Islands, 5 V.I. 549, 359 F.2d 633 (3rd Cir. 1966); Alton v. Alton, 2 V.I. 600, 604 n. 5, 207 F.2d 667, 669 n. 5 (3rd Cir. 1953); Pan American World Airways, Inc. v. Government, 8 V.I. 82, 315 F.Supp. 746 (D.V.I. 1970); Brinn v. Winter, 3 V.I. 105, 126 F.Supp. 902 (D.V.I. 1954). See also, Pan American World Airways, Inc. v. Government of the Virgin Islands, 459 F.2d 387, 395 (3rd Cir. 1972) (observing that in previous cases the Court of Appeals for the Third Circuit had "presumed, without extensive discussion of the issue, that the commerce clause applied" to the Virgin Islands).

While the assumed applicability of the Commerce Clause was not essential to the result reached in the cases cited immediately above, the holding of the Court of Appeals in Southerland v. St. Croix Taxi Association, 315 F.2d 364 (3rd Cir. 1963), is squarely grounded upon the applicability of the Clause. There, the court unequivocally held that the challenged franchise agreement between defendant Taxicab Association and defendant Government "runs afoul of the Commerce Clause of the Constitution." Id. at 369.

---

[2] Throughout this Memorandum we use the terms "foreign imports" and "domestic imports" as they are defined under 33 V.I.C. §§ 42b and 42c, respectively. Thus "foreign imports" comprise "[a]ll taxable articles, goods, merchandise and commodities having a place of manufacture or origin outside the territorial sovereignty of the United States . . . brought into the Virgin Islands from any place outside the Territory," 33 V.I.C. § 42b(a) (Supp. 1983), while "domestic imports" encompass "[a]ll taxable articles, goods, merchandise and commodities having a place of manufacture or origin within the territorial sovereignty of the United States . . . brought into the Virgin Islands from any place outside the Territory." 33 V.I.C. § 42c(a) (Supp. 1983).

Despite the foregoing authority, defendant Government contends that the Commerce Clause does not delimit the authority of the Government of the Virgin Islands in that the Clause is neither among those constitutional provisions explicitly made applicable to the Virgin Islands by operation of § 3 of the Organic Act of 1954, 48 U.S.C. § 1561 (Supp. 1984), nor a fundamental personal right guaranteed by the Constitution to all those within its protection, including residents of unincorporated territories. See, Soto v. United States, 273 F. 628, 632–34 (3rd Cir. 1921). While defendant's factual premises are accurate, its conclusion that the Commerce Clause is therefore inapplicable to the Virgin Islands ignores the structural role of the Commerce Clause in our federal system.

That Congress has plenary power over the territories by virtue of Article IV, Section 3, Clause 2 of the Constitution cannot be gainsaid. That the Commerce Clause and, for that matter, the Import-Export Clause do not embody fundamental personal rights is self-evident. What defendant fails to grasp is that the constitutional grant to Congress of plenary authority to regulate interstate and foreign commerce substantiates a fundamental principle of our federal system of government.

By holding that both the Commerce and Import-Export Clauses delimit the taxing power of the Government of the Virgin Islands, we do not extend to those residing in this Territory constitutional protection in excess of that contemplated by Congress or guaranteed by the Constitution even to residents of unincorporated territories. Rather, we reach the unremarkable conclusion that a territory devoid of the sovereign power reserved to the States under the Constitution may not, consonant with the Constitution, disregard fundamental structural limitations on the economic power of the States which lie at the core of our federalism.[3]

A ruling that a particular tax or regulation violates the Commerce Clause or the Import-Export Clause does not, by design,

---

[3] "It may be doubted whether any of the evils proceeding from the feebleness of the federal government contributed more to that great revolution which introduced the present system, than the deep and general conviction that commerce ought to be regulated by Congress. It is not, therefore, matter of surprise, that the grant should be as extensive as the mischief, and should comprehend all foreign commerce and all commerce among the states. To construe the power so as to impair its efficacy, would tend to defeat an object, in the attainment of which the American public took, and justly took, that strong interest which arose from a full conviction of its necessity." Brown v. Maryland, 25 U.S. (12 Wheat.) 419, 446 (1827) (per Marshall, C.J.).

further the interest of those within the taxing or regulating jurisdiction. The constitutional grant to Congress of plenary authority to regulate interstate and foreign commerce constitutes a structural check on the natural tendency of the various state and territorial governments to legislate from self interest to the economic disadvantage of those politically powerless to influence the policies of the taxing or regulating jurisdiction. As the Supreme Court has recently observed:

> Unrepresented interests will often bear the brunt of regulations imposed by one State having a significant effect on persons or operations in other States. Thus, "when the regulation is of such a character that its burden falls principally upon those without the state, legislative action is not likely to be subjected to those political restraints which are normally exerted on legislation where it affects adversely some interest within the state." South Carolina State Highway Dep't v. Barnwell Bros., 303 U.S. 177, 185 n. 2 (1938); see also Southern Pacific Co. v. Arizona, supra, at 767–768 n. 2. On the other hand, when Congress acts, all segments of the Country are represented and there is significantly less danger that one State will be in a position to exploit others. Furthermore, if a State is in such a position, the decision to allow it is a collective one. A rule requiring a clear expression of approval by Congress ensures that there is, in fact, such a collective decision and reduces significantly the risk that unrepresented interests will be adversely affected by restraints on commerce.

South-Central Timber Development, Inc. v. Wunnicke, 52 U.S.L.W. 4631, 4633 (1984).

■ Our decision, then, does not turn on the constitutional rights of those residing within the Virgin Islands, as defendant seems to suggest. It is, instead, dictated by the Constitution's embodiment of

> a central concern of the Framers that was an immediate reason for calling the constitutional convention; the conviction that in order to succeed the new Union would have to avoid the economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation.

Hughes v. Oklahoma, 441 U.S. 322, 325–26 (1979), cited with approval in South-Central Timber, 52 U.S.L.W. at 4633. We hold, therefore, that the Government of the Virgin Islands cannot disre-

117

gard with impunity the constitutional restraints imposed on the economic power of our half-sister States by operation of the Commerce and Import-Export Clauses without express Congressional authorization. Accord, Duty Free Shoppers, Ltd. v. Tax Commissioner, 464 F.Supp. 730, 734 (D. Guam 1979) (concluding "that Guam is bound by the same limitations as bind the states with respect to both the Commerce and Import-Export Clause"). See also Manila Trading and Supply Company (Guam) v. Maddox, 335 F.2d 150 (9th Cir. 1964) (holding that the Guam gross receipts tax violated the Commerce Clause as applied to trucks and auto parts destined for the Philippines); and Sea-Land Services, Inc. v. Municipality of San Juan, 505 F.Supp. 533, 545 (D.P.R. 1980) (holding that, in the absence of clear congressional authorization to the contrary, "Puerto Rico is constrained by the prohibitory implications of the Commerce Clause as construed by the Supreme Court of the United States"). But see, Buscaglia v. Ballester, 162 F.2d 805, 806 (1st Cir. 1947).

## III

■■ Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign Commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce.[4] See South-Central Timber, 52 U.S.L.W. at 4632; Lewis v. BT Investment Managers, Inc., 447 U.S. 27, 35 (1980); Hughes v. Oklahoma, 441 U.S. at 326; H. P. Hood & Sons, Inc. v. DuMond, 336 U.S. 525, 534–38 (1949); Cooley v. Board of Wardens, 53 U.S. (12 How.) 299 (1852). The Import-Export Clause by its terms imposes limitations on state taxing powers: "No State shall, without the Consent of the Congress lay any Imports or Duties on Imports or Exports . . . ." U.S. Const. art. I, § 10. The authority of Congress to permit state imposition of otherwise impermissible duties is explicit. "It is equally clear that Congress 'may redefine the distribution of power over interstate commerce' by 'permit[ting] the states to regulate commerce in a manner which would otherwise not be permissible.'" South-Central Timber, 52 U.S.L.W. at 4632, quoting Southern Pacific Co. v. Arizona, 325 U.S. 761, 769 (1945). See also Sporhase v. Nebraska ex rel. Douglas, 458

---

[4] Having concluded that the Commerce Clause delimits the taxing power of this Territory as it does the parallel power of the several states, we consider the terms "state" and "interstate" as used by the Supreme Court throughout the body of case law defining the limit of the taxing power of state government to encompass this territory and its commerce in domestic imports, as well.

U.S. 941, 958–60 (1982); New England Power Co. v. New Hampshire, 455 U.S. 331 (1982); Western & Southern Life Insurance Co. v. State Board of Equalization, 451 U.S. 648, 652–55 (1981); Prudential Insurance Co. v. Benjamin, 328 U.S. 408 (1946). Moreover, it is settled that Congress, pursuant to its plenary power over the Territories, U.S. Const. art. IV, § 3, cl. 2, could permit the Virgin Islands to tax interstate or foreign commerce or otherwise authorize "the Territorial Legislature to treat citizens of States the way States cannot treat citizens of sister States." Mullaney v. Anderson, 342 U.S. 415, 420 (1952). See also Duty Free Shoppers, 464 F.Supp. at 733–34.

 Congressional authorization of an otherwise impermissible tax will not, however, be presumed lightly. Whether we view a purported authorization in light of Congress' plenary power over foreign and interstate commerce or its equally plenary power to regulate the territories, the standard is essentially the same. Thus, in those instances in which the Supreme Court has found congressional consent "to the unilateral imposition of unreasonable burdens on commerce," Sporhase, 458 U.S. at 960, "congressional intent and policy to insulate state legislation from Commerce Clause attack has been 'expressly stated.'" South-Central Timber, 52 U.S.L.W. at 4633, quoting Sporhase, 458 U.S. at 960. See also, New England Power, 455 U.S. at 343; Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 155 n. 21 (1982); Prudential Insurance, 328 U.S. at 427. In other words, "for a state regulation to be removed from the reach of the dormant Commerce Clause, congressional intent must be unmistakably clear." South-Central Timber, 52 U.S.L.W. at 4633. Similarly, "[o]nly the clearest expression of Congressional intent," Mullaney v. Anderson, 342 U.S. at 420, will support a finding that Congress authorized an otherwise impermissible tax pursuant to its Article IV power to regulate matters territorial. Having carefully studied the various acts of Congress respecting this Territory, we conclude that nothing therein evinces a congressional intent to alter the limits of territorial taxing power otherwise imposed by the Constitution to an extent sufficient to permit the collection of the "excise" tax codified at 33 V.I.C. § 42.

 Defendant argues at considerable length that various provisions of this Territory's various Organic Acts implicitly grant the Legislature of the Virgin Islands authority to impose the challenged tax. However, defendant directs us to no express grant and our detailed research into the text and legislative history of the var-

119

ious acts of Congress touching this Territory reveal that no such express grant has ever been made. As the District Court of Guam recently observed, "[n]o exemption from the Commerce Clause or the Import-Export Clause will be implied from the mere existence of an organic act which in general terms grants to the new Territory certain powers to tax." Duty Free Shoppers, 464 F.Supp. at 734. Accord, Anderson v. Mullaney, 191 F.2d 123, 128 (9th Cir. 1951), aff'd, 342 U.S. 415 (1952).[5]

## IV

Having concluded that the Commerce and Import-Export Clauses limit the taxing power of the Government of the Virgin Islands, and that Congress has not expressly granted the Territory authority to impose an otherwise impermissible tax, we turn to the constitutional infirmity of 33 V.I.C. § 42.

## A

Subsection (a) of section 42 provides, in pertinent part:

Every individual and every firm, corporation and other association doing business in the Virgin Islands, except those specially taxed, exempted or excluded shall pay an excise tax on all articles, goods, merchandise or commodities *brought into the Virgin Islands* for personal use in a business, for disposition or sale in the course of a trade or business, for processing or manufacturing or for any other business use or purpose, based on the volume or value of any such articles, goods, merchandise, or commodities, as determined according to the provisions of subsections (b) and (c) of this section, according to the following

---

[5] While defendant's extended argument regarding implicit congressional authorization merits little discussion, the immediate, if illusory, appeal of defendant's reliance on Authorization Appropriation—Insular Areas of the United States, Act of March 12, 1980, Pub. L. No. 96–205, 1980 U.S. Code Cong. and Ad. News (94 Stat.) 89, compels us to address said act.

Title IV, § 405 thereof provides:

Any excise taxes levied by the Legislature of the Virgin Islands may be levied and collected as the Legislature of the Virgin Islands may direct as soon as the articles, goods, merchandise, and commodities subject to said tax are brought into the Virgin Islands.

The plain meaning of this provision belies defendant's contention that said provision authorizes the Legislature of the Virgin Islands to impose an otherwise impermissible tax. Section 405 is not a grant of taxing power. It merely authorizes the collection of otherwise lawful taxes upon the importation of taxable items into the jurisdiction. It plainly does not authorize the Legislature to discriminate between goods of territorial and extra-territorial origin in the imposition of taxes. No other reading of this provision is supportable.

schedule, except on each shipment for which the excise tax is less than five ($5.00) dollars; . . . .

33 V.I.C. § 42(a) (Supp. 1983) (emphasis added).

Section 42, by its terms, imposes a tax upon items "brought into the Virgin Islands," while exempting similar, or even identical, items produced within the Territory. Thus, while denominated an "excise" tax, § 42 functionally constitutes a tax on imports, both foreign and domestic. See 6 V.I. Op. Att'y Gen. 78, 79 (1968) ("The act of importing goods into the Virgin Islands for personal use or disposition in the course of trade or business constitutes the event that brings the excise tax provision of section 42(a) of Title 33 of the Virgin Islands Code into operation").

██ Defendant readily admits that § 42 taxes "a particular kind of merchandise (that which is brought into the territory)." Memorandum of Law in Support of Opposition to Summary Judgment on Behalf of Plaintiff and in the Alternative for Judgment in Favor of Defendants at 3. While we do not question the power of the Government to discriminate among "particular kind[s] of merchandise" in the exercise of its taxing power, it has long been settled

> [t]hat no State can, consistently with the Federal Constitution, impose upon the products of other States brought therein for sale or use, or upon citizens engaged in the sale therein, or the transportation thereof, of the products of other States, more onerous public burdens or taxes than it imposes upon the like products of its own territory.

Guy v. Baltimore, 100 U.S. 434, 439 (1880) (per Harlan, J.).

We are hard pressed to imagine a taxing scheme more patently violative of the Commerce Clause than the one before us. As the Supreme Court has recently observed, that Court's "cases make clear that discrimination between in-state and out-of-state goods is as offensive to the Commerce Clause as discrimination between in-state and out-of-state taxpayers." Bacchus Imports, Ltd. v. Dias, 52 U.S.L.W. 4979, 4981 (1984). See, e.g., I. M. Darnell & Son Co. v. City of Memphis, 208 U.S. 113, 125 (1908) (invalidating the challenged tax as "a direct burden upon interstate commerce, since the law of Tennessee in terms discriminated against property the product of the soil of other states brought into the state of Tennessee"); Walling v. Michigan, 116 U.S. 446, 455 (1886) (striking down a law imposing a tax on the sale of alcoholic beverages produced outside the State, the Court declared: "A discriminating tax imposed by a State oper-

121

ating to the disadvantage of the products of other States when introduced into the first mentioned State, is in effect, a regulation in restraint of commerce among the States and as such is a usurpation of the power conferred by the Constitution upon the Congress of the United States"); Welton v. Missouri, 91 U.S. 275, 277 (1876) (striking down a Missouri statute that "discriminat[ed] in favor of goods, wares, and merchandise which are the growth, product, or manufacture of the State, and against those which are the growth, product, or manufacture of other States or countries").

Just this past term the Supreme Court struck down a 20% excise tax imposed on the sale of liquor in Hawaii, which tax specifically exempted certain locally produced alcoholic beverages. In doing so the Court observed:

> A cardinal rule of Commerce Clause jurisprudence is that "[n]o State, consistent with the Commerce Clause, may 'impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business.'"

Bacchus, 52 U.S.L.W. at 4981, quoting Boston Stock Exchange v. State Tax Commission, 429 U.S. 318, 329 (1977) (quoting, in turn Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 457 (1969)).

■ The Bacchus Court reiterated that "[a] finding that state legislation constitutes 'economic protectionism' may be made on the basis of either discriminatory purpose . . . or discriminatory effect." Bacchus, 52 U.S.L.W. at 4981 (citation omitted). See Hunt v. Washington Apple Advertising Commission, 432 U.S. 333, 352–53 (1977) and Philadelphia v. New Jersey, 437 U.S. 617, 624 (1978). There, as here, the only proffered justification for the exemption of locally produced goods was the encouragement of domestic industry. While this is admittedly a legitimate governmental objective, "the Commerce Clause stands as a limitation on the means by which a State can constitutionally seek to achieve that goal." Bacchus, 52 U.S.L.W. at 4981. Indeed, "[o]ne of the fundamental purposes of the Clause 'was to insure . . . against discriminating State legislation.'" Welton v. Missouri, 91 U.S. 275, 280 (1876), cited with approval in Bacchus, 52 U.S.L.W. at 4981. Here, as in Bacchus, the exemption of locally produced goods is unmistakably discriminatory in that it is based not upon the inherent nature of such goods but upon their locus of origin:

> It has long been the law that States may not "build up [their] domestic commerce by means of unequal and oppressive

burdens upon the industry and business of other States." Guy v. Baltimore, 100 U.S. 434, 443 (1880). Were it otherwise, "the trade and business of the country [would be] at the mercy of local regulations, having for their object to secure exclusive benefits to the citizens and products of particular States." Id. at 442. It was to prohibit such a "multiplication of preferential trade areas" that the Commerce Clause was adopted. Dean Milk Co. v. Madison, 340 U.S. 349, 356 (1951).

Bacchus, 52 U.S.L.W. at 4982.

## B

■ The exemption of locally produced goods from the reach of 33 V.I.C. § 42 results in foreign imports, like domestic imports, being taxed not because of their nature, but because of their place of origin. This the Constitution does not permit, absent express congressional authorization: "The Import-Export Clause clearly prohibits state taxation based on the foreign origin of the imported goods." Michelin Tire Corp. v. Wages, 423 U.S. 276, 287 (1976).

■ We do not deny that Congress has expressly authorized the Legislature of the Virgin Islands to "impose on the importation of any article into the Virgin Islands for consumption therein a customs duty." 48 U.S.C. § 1574(f)(1) (Supp. 1984), Revised Organic Act of 1954, § 8(f)(1) (Supp. 1983). We note, however, that Congress has expressly limited the rate of such permissible duty to "6 per centum ad valorem" or the equivalent thereof. 48 U.S.C. § 1574(f)(1)(A) and (B) (Supp. 1984), Revised Organic Act of 1954, § 8(f)(1)(A) and (B) (Supp. 1983). Thus, to the extent that the "excise" tax codified at 33 V.I.C. § 42 is levied against foreign imports in addition to the 6% customs duty authorized by Congress, said "excise" tax, functionally an import duty, violates the Import-Export Clause of the United States Constitution. See 33 V.I.C. §§ 529–532 (Supp. 1983). *Compare* 33 V.I.C. § 42b(d)(2) *with* 33 V.I.C. § 42c(d)(2).

## V

■ For the foregoing reasons we have concluded that the "excise" tax codified at 33 V.I.C. § 42 impermissibly infringes upon the plenary authority of Congress to regulate interstate and foreign commerce in violation of the Commerce and Import-Export Clauses of the United States Constitution. U.S. Const. art. I, §§ 8 and 10. Accordingly, we have granted plaintiff's motion for summary judgment insofar as said motion sought a declaration of the constitutional infirmity of the challenged tax.

123

The record before us, however, is wholly inadequate to determine the extent to which plaintiff has suffered compensable injury as a result of the unconstitutional operation of said tax. Accordingly, we have denied plaintiff's motion for summary judgment insofar as said motion sought relief beyond a declaration that the challenged tax cannot withstand constitutional scrutiny. Testimony and arguments concerning damage computation, and any other remaining issues the parties wish to raise, will be entertained at the plenary hearing scheduled for the trial period beginning October 29, 1984. This is a peremptory setting. In short, no continuance will be granted.

## VI

In closing we wish to emphasize the narrowness of our holding. To do so we borrow the words of Justice White:

> Our decision today does not prevent the States from structuring their tax systems to encourage the growth and development of intrastate commerce and industry. Nor do we hold that a State may not compete with other States for a share of interstate commerce; such competition lies at the heart of a free trade policy. We hold only that in the process of competition no State may discriminatorily tax products manufactured or the business operations performed in any other state.

Boston Stock Exchange v. State Tax Commission, 429 U.S. 318, 336–37 (1977).