## DUTY FREE SHOPPERS, LTD., Petitioner-Appellee,

### v.

## TAX COMMISSIONER, Respondent-Appellant.

### No. C 1023–75.

District Court of Guam.

Feb. 2, 1979.

731

Trapp, Gayle, Teker, Lacy & Moore, Agana, Guam, for petitioner-appellee.

W. Don Parkinson, Acting Atty. Gen., P. H. Jacobsen, Deputy Atty. Gen., Government of Guam, Agana, Guam, for respondent-appellant.

Before DUENAS and HILL *, District Judges, and BURNETT **, Designated Judge.

* The Honorable Irving Hill, United States District Judge for the Central District of California, sitting by designation.

** The Honorable Harold W. Burnett, Chief Justice, High Court of the Pacific Islands, sitting by designation.

OPINION

IRVING HILL, District Judge:

In this opinion, we reverse a summary judgment of the trial court which held unconstitutional the Guam gross receipts tax as applied to a taxpayer who sells and delivers liquor and tobacco products to departing passengers at the Guam International Airport. While holding that both the Import-Export and Commerce Clauses of the U. S. Constitution apply in Guam, we hold that neither clause is violated on the facts before us.

We also hold that the benefits of the Guam Tobacco Tax Drawback Statute are not available to the same taxpayer because it does not deliver tobacco products to a point outside of Guam.

## I. GROSS RECEIPTS TAX

### (A) FACT STATEMENT

Duty Free Shoppers (hereinafter "petitioner") is a Hong Kong corporation which is qualified to do business in Guam. It maintains a large retail shop at the Guam International Airport wherein liquor, tobacco and other goods are sold to airline passengers generally.

The evidence in the record before us is undisputed that liquor and tobacco items sold at the airport shop are sold only to passengers departing from Guam and are sold by a system of chits. Under that system, the purchaser pays for the item at a sales counter in the airport and receives a chit. The item is not delivered to the passenger until he surrenders his chit while exiting the boarding gate en route to board his plane. The delivery is made in what is called the "sterile area" of the airport.[1] The evidence in the record is conflicting on how goods other than liquor and tobacco items are sold and delivered at the airport shop.[2]

Besides its airport shop, petitioner maintains a number of other retail shops at various hotels and other in-town locations. There is no evidence whatsoever in the record as to how any merchandise (liquor, tobacco or other items) is sold and delivered at petitioner's non-airport shops.

Guam Government Code §§ 19540 and 19541 impose a tax on the privilege of doing business in Guam. For businesses selling tangible personal property, the tax is fixed at 4% of the taxpayer's gross receipts. Un-

---

1. The evidence indicates that all airlines except Pan American hand all liquor and tobacco packages to the departing passenger. Pan American hands only the smaller packages to him and stows the larger ones in the cargo area of the airplane as checked baggage, later handing those packages to the passenger when he disembarks at his destination. We see no effective difference in this latter procedure, believing it to involve a constructive delivery in Guam and to be indistinguishable in fact and law from the procedure employed by the other airlines.

2. An affidavit submitted by the petitioner indicates that the system of sale by chit and delivery in the "sterile area" is not employed for products other than liquor and tobacco. However, the affidavit claims that "elaborate precautions" (which are not detailed) are taken as to such other items to make sure that they do not find their way into the stream of local commerce in Guam. The affidavit describes how the purchaser is required to disclose his

nationality, date of his departure and the name and flight number of the carrier, which information is recorded on a "sales check" of some kind. This evidence is contradicted by an affidavit filed by the Commissioner. The affiant describes how a Guam resident was able to purchase a number of non-liquor and non-tobacco items at the airport shop without any such data having been requested and without any such sales check having been filled out. The affiant goes on to describe how he left the airport shop with his purchases and took them to his home in Guam. The petitioner apparently contends that restricting the sale of such items to departing airline passengers is the equivalent of such items being in the stream of commerce and the export stream. We need not comment on the merits of that claim since the facts are in dispute and because of our holding, *infra*, that the tax can be validly imposed even if the goods are deemed to be in the stream of commerce or the export stream.

der § 19541.0101 gross receipts from proceeds of "sales of tangible property in foreign commerce . . ." are specifically included in taxable sales.

The instant case involves petitioner's tax returns and the extent of its liability under the aforesaid tax statutes, for the years 1973 and 1974. The petitioner filed returns for those years disclosing all of its gross receipts from all of its sales at all of its Guam shops. However, in those returns, the petitioner claimed as exempt from the gross receipts tax: (1) all sales at its airport shop of all types of goods, and (2) all sales at its non-airport shops of all liquor and tobacco items. Petitioner declined to pay any tax on those sales which it claimed as exempt.

The Guam Tax Commissioner disallowed the exemption claim in all respects and assessed additional taxes to the petitioner for all of the sales involved in the exemption claim. After an unsuccessful administrative appeal, the petitioner filed the instant action in the Superior Court wherein it sought an abatement of the additional tax assessment. After an answer was filed, the petitioner moved for a summary judgment as to the entire additional assessment. The trial court granted the summary judgment motion in part and denied it in part. It was granted as to all sales of liquor and tobacco items occurring at both airport and non-airport locations. These were held to be exempt from the gross receipts tax. It was denied as to sales at the airport shop of items other than tobacco and liquor because of the conflict in the evidence discussed in footnote 2, *supra.* The Commissioner appealed. As will be seen, we reverse the partial summary judgment granted by the trial court.

### (B) *DISCUSSION OF THE LAW*

In the trial court, and here, petitioner asserts that the imposition of the gross receipts tax on its sales of all goods at the airport shop and on its sales of liquor and tobacco items sold from its non-airport shops but delivered at the airport, violates both the Commerce Clause and the Import-Export Clause of the U. S. Constitution.[3]

The trial court's brief opinion upholds the petitioner's claim as to the Commerce Clause. For that reason, the trial judge apparently found it unnecessary to deal with the claim based on the Import-Export Clause. Since we find that the trial court was incorrect in its Commerce Clause holding, we must also examine the petitioner's claim under the Import-Export Clause.

Before dealing with the constitutional law aspects of the case, we must observe that the summary judgment granted by the trial court is too broad. Insofar as it adjudicates the status of liquor and tobacco sales from petitioner's non-airport shops, it is in error because the record, as aforesaid, contains no evidence as to the manner in which these sales and deliveries were handled.

We now turn to the status of the airport sales of liquor and tobacco products under the Commerce and Import-Export Clauses. In so doing, we must examine a threshold question: Is the Territory of Guam bound by those clauses of the U. S. Constitution?

While arguing that neither constitutional clause is violated by imposition of the gross receipts tax to the airport sales of liquor and tobacco products, the Tax Commissioner also contends, *in limine,* that neither the Commerce Clause nor the Import-Export Clause is applicable to the Territory of Guam. We do not agree with this view.

■ Congress could have specifically exempted the Territory of Guam (or any other Territory) from the strictures of the Commerce Clause and Import-Export Clause and could have permitted Guam to tax interstate and foreign commerce and to levy imposts and duties on imports and exports. *Anderson v. Mullaney,* 191 F.2d 123, 13 Alaska 332 (9th Cir.), aff'd 342 U.S. 415, 72

---

**3.** At the administrative level and in the Superior Court, the petitioner advanced a third contention, i. e., that by virtue of its contract with the Government of Guam, the latter had surrendered its authority to claim that gross receipts from the items in question were subject to the tax. As we read petitioner's papers in this court, that claim has now been abandoned.

S.Ct. 428, 96 L.Ed. 458 (1952); *Buscaglia v. Ballester*, 162 F.2d 805 (1st Cir. 1947). This congressional power stems from Article IV, Sec. 3, Cl. 2 of the Constitution which authorizes Congress to "make all needful Rules and Regulations" respecting a Territory of the United States.

 Before finding such an exemption to exist, a court must find the expression of a clear Congressional intention. No exemption from the Commerce Clause or the Import-Export Clause will be implied from the mere existence of an organic act which in general terms grants to the new Territory certain powers to tax. *Anderson v. Mullaney, supra*, 191 F.2d at 128. With respect to Guam, the taxing power granted in the Guam Organic Act (48 U.S.C. § 1423a) is in general terms and contains no language indicating any intention to suspend the operation of either the Commerce Clause or Import-Export Clauses in Guam. The Tax Commissioner points to no other language in the Guam Organic Act which could have that effect. We, therefore, conclude that Guam is bound by the same limitations as bind the states with respect to both the Commerce and Import-Export Clauses.[4]

## COMMERCE CLAUSE

 We turn now to the constitutionality of taxing gross receipts from liquor and tobacco items sold by the chit system at the airport as above described. Contrary to the trial court's holding, we hold that Guam may validly tax such sales under the Commerce Clause.

It must be conceded that liquor and tobacco products sold by the petitioner at the airport shop under the chit system and delivered to departing passengers in the "sterile area" of the airport, are goods which have entered the stream of interstate or foreign commerce. *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964); *Ammex Warehouse Co. v. Department of Alcoholic Beverage Control*, 224 F.Supp. 546 (S.D. Cal.), *aff'd per curiam* 378 U.S. 124, 84 S.Ct. 1657, 12 L.Ed.2d 743 (1964). Until very recently, that determination would have ended the case and the petitioner's claim of exemption would have been sustained without the need for extended discussion. Two decisions of the Supreme Court would have expressly and clearly precluded application of a privilege tax based on gross receipts to revenues derived from such sales as being an impermissible burden on interstate commerce. *Spector Motor Service v. O'Connor*, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951); *Freeman v. Hewit*, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265 (1946). Relying on *Freeman*, our Circuit in 1964 held that the very Guam gross receipts tax in question here could not be constitutionally applied to gross receipts from interstate commerce sales. *Manila Trading & Supply Co. v. Maddox*, 335 F.2d 150 (9th Cir. 1964). So as of July 6, 1976, when the trial court opinion in the instant case was filed, it correctly enunciated the law. The trial judge could not then have anticipated that the authority of *Spector*, *Freeman* and *Manila Trading* was soon to end.

In *Complete Auto Transit v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). *Spector* and *Freeman* were expressly overruled. In *Complete Auto Transit*, automobiles manufactured outside Mississippi were sent by rail from the place of manufacture to Jackson, Mississippi, where they were loaded on the trucks of plaintiff taxpayer for transport to Mississippi auto dealers who had purchased them from the manufacturer. The automobiles, when so loaded on plaintiff's trucks, were deemed still to be in the stream of interstate commerce. Mississippi sought to tax the plaintiff's revenue from this transport service

---

4. Our conclusion is buttressed by the decision of our Circuit in *Manila Trading & Supply Co. v. Maddox*, 335 F.2d 150 (9th Cir. 1964). In *Manila Trading & Supply Co.*, the Ninth Circuit held that the very gross receipts tax statute which is involved in this case, violated the Commerce Clause as applied to truck and auto parts destined for the Philippines. The opinion assumes, without discussion, that the Commerce Clause applies to Guam although that question does not seem to have been raised in the appeal. But *cf.: Buscaglia v. Ballester, supra*, 162 F.2d at 806.

under a state tax imposed on the privilege of engaging in business within Mississippi and measured by the gross proceeds of sales within the state. The Supreme Court rejected the trucker's challenge to the validity of the tax as an impermissible burden on interstate commerce and affirmed a decision of the Mississippi Supreme Court upholding the tax. The Court held that states may now validly tax the privilege of doing business within their borders even as applied to revenues from interstate commerce activities, subject to four limitations. The limitations are:

1. The activity which the state taxes must have a sufficient nexus with the state.

2. The tax must not discriminate against interstate commerce.

3. The tax must not be unfairly apportioned. Where the activities affect more than one state, the taxing state may only tax such portion thereof as actually occur within its borders, and

4. The tax must be related to services provided by the taxing state.

Nothing in the record before us indicates that any of these limitations exists in the instant case so as to preclude the valid application to the petitioner of the Guam gross receipts tax.

## IMPORT–EXPORT CLAUSE

We now proceed to examine petitioner's claim that application of the Guam gross receipts tax to its airport sales of liquor and tobacco, violates the Import-Export Clause of the Constitution. We note initially that only a portion of these sales are involved in this claim. Sales of liquor and tobacco products to passengers departing Guam for other points in the United States could not conceivably come within the Import-Export Clause. So this part of our discussion applies only to sales to passengers departing Guam for foreign destinations.

■ We conclude that the Import-Export Clause, like the Commerce Clause, is not violated by the Guam statute as applied to the airport sales in question.

The Import-Export Clause reads as follows:

"No State shall, without the Consent of Congress, lay any Imposts or Duties on Imports or Exports . . . ." U.S. Const., Art. I, Sec. 10, Cl. 2.

In considering the applicability of that Clause to sales and deliveries of particular goods, we must first determine if the goods in question have become exports which in turn requires us to examine whether they have entered the "export stream". The Supreme Court has used differing language in phrasing the nature of this inquiry. The Court has said in its most recent opinion that we must consider whether the goods have embarked on their "final, continuous journey out of the country." *Department of Revenue of State of Washington v. Association of Washington Stevedoring Companies*, 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978). In an earlier opinion, the Court said that goods enter the export stream when their "movement to foreign shores had . . . started [or] been committed." *Kosydar v. National Cash Register Co.*, 417 U.S. 62, 70–71, 94 S.Ct. 2108, 2113, 40 L.Ed.2d 660 (1974).

Applying either phraseology, we are satisfied that when liquor and tobacco products are delivered to a departing passenger en route to foreign shores in the "sterile area" of the airport, such goods, having entered the export stream, constitute exports.

■ But that conclusion does not end the analysis. The Import-Export Clause does not prohibit any and all taxes on exports, it prohibits only "Imposts or Duties" thereon. Under the most recent holding of the Supreme Court, we have concluded that the Guam gross receipts tax as imposed on these exports does not constitute an impermissible Impost or Duty.

Here again, we have the benefit of an exhaustive discussion of the problem by the Supreme Court in a case which was not decided until after the trial court's opinion herein was filed. That case is *Department of Revenue of State of Washington v. Asso-*

*ciation of Washington Stevedoring Companies, supra.*

The Court stresses in *Department of Revenue* that a state tax on the privilege of doing business within the state, measured by gross receipts, may include gross receipts from exports if it meets two requirements. They are:

 1. The tax must not disrupt the foreign policy of the United States, and

 2. It must avoid conflict and trade barriers among the states:

We are satisfied that the Guam gross receipts tax as applied in this case, meets the two above requirements and is, therefore, a permitted tax on exports. The instant tax is on the privilege of conducting business within Guam. It is properly and validly imposed for the purpose of levying a fair tax on the business of exporting goods from Guam in return for the benefits and protection given to that business by Guam.

For the reasons above stated, the partial summary judgment granted to the petitioner involving the Guam gross receipts tax, is ordered reversed.

## II. TOBACCO TAX DRAWBACK

On petitioner's 1973 return, a net balance was shown to be due under the gross receipts tax, even after giving effect to the exemptions discussed in I above. From the balance admittedly due under the gross receipts tax, petitioner offset and deducted the sum of $29,369.08 as being allegedly due to petitioner under the Guam Tobacco Drawback Tax law. The Tax Commissioner disallowed the offset and petitioner's action in the Superior Court sought a declaration that the disallowance was improper. The propriety of the offset was raised in petitioner's summary judgment motion. The amount of the offset apparently includes claimed tobacco drawbacks for both petitioner's tobacco sales at its airport shop and its tobacco sales at its non-airport shops. The trial court granted summary judgment in the full amount of the claim.

Under any theory, the summary judgment granted is too broad. As above stated, there are no facts in the record which describe how tobacco sales from petitioner's non-airport shops are handled and delivered. So the portion of the summary judgment attributable to such non-airport sales is reversible *ab initio* for lack of evidence in the record to support it.

But a portion of the summary judgment is attributable to petitioner's sale and delivery of tobacco products at the airport shop. In this respect, the evidence in the record is undisputed and the issue presented thus becomes purely one of law. As to such sales, we also reverse, holding that the trial court erroneously construed the statute.

■ Guam Government Code § 19590 imposes an excise tax on all who manufacture tobacco products in Guam or import tobacco products into Guam. The Territorial Legislature apparently recognized that such a tax is not fairly imposed on tobacco products which are thereafter exported from Guam. Thus the Legislature has enacted Guam Government Code § 19592 which permits one who has shipped tobacco products out of Guam to obtain a "drawback" or refund of the tax previously paid on such products even though that person is not the same person who paid the tax initially. § 19592 provides in relevant part as follows:

 "Export drawback. There shall be allowed to any applicant therefor an export drawback of the full amount of a tax paid under this Subchapter . . . upon fulfillment of the following conditions:

 "01. That the tobacco manufactured or produced in Guam or brought into Guam, *has been consigned, and duly delivered to a point outside the Territory of Guam,* . . ." (Emphasis supplied).

The petitioner contends that the tobacco products which it sells at its airport shop and delivers in the "sterile area" at the airport to purchasers departing from Guam, is tobacco which "has been consigned, and duly delivered to a point outside the Territory of Guam" under the statute. The trial court apparently agreed with that contention but without any detailed discussion of

its rationale. We find ourselves in disagreement with the trial court.

It is petitioner's burden to prove factually that it meets the conditions set forth in § 19592 for obtaining a drawback. No such proof exists in the record before us. On the contrary, the facts show that the tobacco in question is consigned to a passenger who is still in Guam and is delivered to him while he is still in Guam. There is no factual or legal basis or theory under which the "sterile area" of the airport can be considered to be "a point outside the Territory of Guam".

It appears that the statute in question has never previously been interpreted in any reported court decision. So the instant case is one of first impression. Petitioner relies exclusively on the line of cases discussed above which analyzes at what point a product has entered the stream of commerce or the export stream. Reliance on these cases is, in our view, inappropriate and incorrect. No analogy to the Commerce Clause or Import-Export Clause decisions is needed here. The legislature has used precise and definite terms to define and prescribe when the drawback may be claimed. If the Legislature had wished to permit the drawback refund for tobacco which had entered the export stream, it would have said so. It has instead said that the product must be *consigned and delivered* to a point outside of Guam. No constitutional question is presented in this phase of the case. The problem is one of statutory interpretation only. The statute appears to us to be clear on its face.

### III. CONCLUSION

For the reasons herein stated, the judgment below is reversed and the case remanded for further proceedings consistent herewith.