721 P.2d 137

**ARIZONA DEPARTMENT OF REVENUE, Plaintiff-Appellee,**

v.

**ROBINSON'S HARDWARE, a partnership consisting of Zellie Capin, Richard Capin, Harlan M. Capin, Hyman Capin, Leonard Cooper, and Robert S. Stuchen, Defendant-Appellant.**

No. 1 CA–CIV 7640.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 30, 1986.

Reconsideration Denied March 28, 1986.

Review Denied July 15, 1986.

Robert K. Corbin, Atty. Gen. by Toni S. McClory, Frank L. Migray, Asst. Attys. Gen., and Anthony B. Ching, Sol. Gen., Phoenix, for plaintiff-appellee.

Bilby & Shoenhair, P.C. by David W. Richter, Harold C. Warnock, Douglas J. Newman, Tucson, for defendant-appellant.

OPINION

BROOKS, Judge.

This is an appeal from a summary judgment upholding the Arizona Department of Revenue's (Department) assessment against Robinson's Hardware Store (appellant) for a transaction privilege tax deficiency. The relevant facts are as follows.

Appellant is a partnership doing business in Nogales, Arizona. It has a department called "Materials for Industry" which sells merchandise exclusively to factories located in Mexico. Delivery of appellant's goods to its Mexican customers is accomplished in one of two ways: some of the Mexican factories maintain warehouses in

Nogales and simply have appellant's merchandise delivered to those warehouses after sale where it is then stored until shipped to Mexico; in other cases, the merchandise is picked up at appellant's place of business by either an employee of the factory or someone in the business of transporting goods into Mexico. In any event, all merchandise is purchased for use in Mexico and is ordered from there.

In 1973, appellant sent a letter to the Department's predecessor, the State Tax Commission, outlining its operations and requesting an opinion as to whether its sales were subject to the state's transaction privilege tax. At that time, A.R.S. § 42-1309 defined the transaction privilege tax as follows:[1]

> **§ 42-1309.  Levy of tax; purposes; distribution**
>
> A.  There is levied and there shall be collected by the commission, for the purpose of raising public money to be used in liquidating the outstanding obligations of the state and county governments, to aid in defraying the necessary and ordinary expenses of the state and the counties, to reduce or eliminate the annual tax levy on property for state and county purposes, and to reduce the levy on property for public school education, *privilege taxes measured by the amount or volume of business transacted by persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income,* as the case may be ... (emphasis added.)

The State Tax Commission responded with a letter dated February 26, 1973 stating that such sales to Mexican factories would be exempt from the tax if the merchandise was forwarded to Mexico without first being used in Arizona. All of the merchandise subject to the deficiency assessment involved here was forwarded to Mexico without first being used in Arizona.

From June, 1978, to February, 1981, the Department audited appellant and issued a $69,803.83 assessment alleging a transaction privilege tax deficiency resulting from appellant's failure to include its sales to Mexican customers in its gross sales proceeds or gross income. Appellant disputes all but approximately $1200 of this assessment. An administrative hearing upheld the assessment, but the State Board of Tax Appeals voided the assessment, holding that sales to Mexican customers were exempt from the tax under the Import-Export Clause of the United States Constitution. The Department appealed to the superior court, which granted summary judgment in favor of the Department reinstating the assessment. Appellant now seeks review in this court.

Two issues are dispositive on appeal:

1.  Does the Import-Export Clause of the United States Constitution prohibit assessment of Arizona's transaction privilege tax upon the sale of export goods to foreign customers?

2.  Did the Arizona Department of Revenue abuse its discretion by reversing its position as stated in its February 26, 1973 letter by holding that appellant's sales to Mexican customers were taxable?

### I.

The Import-Export Clause of the United States Constitution, Art. I, § 10, states that:

> No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws.

Appellant argues that this clause prohibits Arizona from assessing a transaction privilege tax on that portion of its gross proceeds which arise from sales to Mexican customers. It rests its argument almost entirely on the decision of the United States Supreme Court in *Richfield Oil*

---

1.  Arizona Revised Statute § 42-1309 was renumbered as § 42-1306 and amended, effective August 7, 1985. The newly amended statute permits municipalities within the state to receive monies levied under the transaction privilege tax.

*Corp. v. State Board of Equalization,* 329 U.S. 69, 67 S.Ct. 156, 91 L.Ed. 80 (1946). In *Richfield,* the Supreme Court held unconstitutional the imposition of a state excise tax for the privilege of doing business on a sale of oil by a California oil producer to New Zealand. The Court held that the Import-Export Clause bars *all* taxes on imports or exports. *Richfield,* 329 U.S. at 76, 67 S.Ct. at 160, 91 L.Ed. at 89. The focus of the *Richfield* Court's analysis was solely on whether the goods being taxed were "exports" at the time the tax was levied. If the goods had already entered the export stream, having a certainty of foreign destination, the goods were "exports" and no tax was permitted. If the goods had not yet entered the export stream, it being uncertain as to their destination, they were not "exports" and would be subject to tax. The Court held that the incident which gave rise to the tax on the California producer's sale of oil was a step in the "export process" and the tax was therefore improper, as it constituted a tax on an "export."

Appellant argues that its sales to Mexican factories are clearly exports and therefore, under *Richfield,* are not subject to Arizona's transaction privilege tax. We disagree and find that the rule enunciated in *Richfield* is no longer the proper standard by which to measure the validity of state taxation on foreign commerce under the Import-Export Clause. Rather, we conclude that the test announced in *Michelin Tire Corp. v. Wages,* 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495 (1976), is now the proper standard to be applied in cases such as the one at hand.

In *Michelin,* the Supreme Court upheld Georgia's assessment of a nondiscriminatory ad valorem property tax against tires imported from France and Nova Scotia which were being displayed for sale at petitioner's place of business. In its ruling, the Court noted that the Import-Export Clause did not bar *all* taxes on foreign commerce by the states, but only "imposts or duties." 423 U.S. at 290, 96 S.Ct. at 543, 46 L.Ed.2d at 506. In searching for a method for determining which types of taxes fall within the category of imposts and duties, the Court noted that the Import-Export Clause was designed to alleviate three concerns of the Founding Fathers by placing exclusive power to lay imposts and duties in the Federal Government. These concerns were: prohibiting the states from interfering with the conduct of foreign affairs by placing local tariffs and duties on foreign nations' goods; preventing the diversion of import revenues from the Federal Government to the states; and avoiding disharmony among the states by preventing states from levying taxes on goods merely passing through their territory destined for other states. The Court held that the Georgia tax was not an impost or duty barred by the Import-Export Clause since it did not give rise to the concerns to which the clause was addressed. In so holding, the Court stated that:

> [t]he terminology employed in the Clause —"Imposts or Duties"—is sufficiently ambiguous that we decline to presume it was intended to embrace taxation that does not create the evils the clause was specifically intended to eliminate.

423 U.S. at 293–94, 96 S.Ct. at 544, 46 L.Ed.2d at 508.

It is clear that in *Michelin,* the Court changed the focus of Import-Export Clause analysis from the nature of the goods to the nature of the challenged tax. The issue is no longer whether the goods subject to the tax are "imports" or "exports" at the time of taxing, but whether the challenged tax itself is an "impost" or a "duty." Determination of this issue is based on an analysis of the three policy concerns enunciated in *Michelin.* A tax on foreign commerce which does not violate any of these policy concerns does not fall within the terminology of an "impost or duty" and is therefore not prohibited.

This view is supported by the Supreme Court's decision in *Department of Revenue v. Association of Washington Stevedoring Cos.,* 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978), which followed and explained the Court's decision in *Michelin.*

In *Washington Stevedoring*, the Court noted that:

> *Michelin* initiated a different approach to Import-Export Clause cases. It ignored the simple question whether the tires and tubes were imports. Instead, it analyzed the nature of the tax to determine whether it was an "Impost or Duty." [citation omitted]. Specifically, the analysis examined whether the exaction offended any of the three policy considerations leading to the presence of the Clause....

439 U.S. at 752, 98 S.Ct. at 1400, 55 L.Ed.2d at 690. *See also, Limbach v. Hooven & Allison Co.*, 466 U.S. 353, 104 S.Ct. 1837, 80 L.Ed.2d 356 (1984); *Western Oil & Gas Assoc. v. Cory*, 726 F.2d 1340, 1345 (9th Cir.1984).

Moreover, the Court in *Washington Stevedoring* went further and expressly held that the *Michelin* analysis applies to taxation involving *exports* as well as imports. *Washington Stevedoring*, 435 U.S. at 758, 98 S.Ct. at 1403, 55 L.Ed.2d at 702. In reaching this holding, the Court noted that an export tax ban promotes two of the three policies enumerated in *Michelin:* precluding state disruption of United States foreign policy and avoiding friction and trade barriers between the states. 435 U.S. at 758, 98 S.Ct. at 1403, 55 L.Ed.2d at 702. The Court held that the validity of any tax relating to exports can be tested by its conformance with these policies, stating that "[i]f the constitutional interests are not disturbed, the tax should not be considered an 'Impost or Duty' ". *Id.* The fact that a case involves exports rather than imports, as is the situation here, does not, therefore, prevent application of the *Michelin* approach in determining the validity of the state tax. It only reduces the number of constitutional policies to be considered.

This view is supported by the case of *Duty Free Shoppers v. Tax Commissioner*, 464 F.Supp. 730 (D.Guam, 1979), which is almost directly on point with the present case. There, the court applied the *Michelin* test, as announced in *Washington Stevedoring*, to uphold a business privilege tax under facts very similar to those here. In *Duty Free Shoppers*, Guam imposed a tax on the petitioner for the privilege of doing business. Petitioner sold cigarettes and liquor to airport customers going abroad and claimed that its sales were foreign exports and therefore not taxable under the Import-Export Clause. In its holding, the court noted that the cigarette and liquor sales were exports, but that they were not sheltered from all taxes, but only from imposts or duties. *Duty Free Shoppers*, 464 F.Supp. at 735. The court then applied the *Michelin* test as announced in *Washington Stevedoring*, holding that

> a state tax on the privilege of doing business within the state, measured by gross receipts, may include gross receipts *from exports* if it meets two requirements. They are:
>
> 1. The tax must not disrupt the foreign policy of the United States, and
> 2. It must avoid conflict and trade barriers among the states....

464 F.Supp. at 736. (Emphasis added.)

It thus seems clear that the straightforward policy analysis of *Michelin* and *Washington Stevedoring* should apply to the instant case. If imposing Arizona's transaction privilege tax on appellant's sales does not offend any of the concerns underlying the Import-Export Clause's prohibition against imposts or duties, it is constitutionally valid and enforceable. Appellant argues, however, that we must apply a bifurcated analysis to this case rather than the straight policy analysis of *Michelin*. It contends that we must first look to see whether the tax in question falls directly or indirectly upon the imported or exported goods in transit. Where the tax is indirectly on the goods, the *Michelin* policy analysis should apply. Appellant argues, however, that where the tax is directly on goods in transit, *Richfield*, which has never been expressly overruled by the Supreme Court, still applies a *per se* rule of prohibition and the tax must be declared unconstitutional under the Import-Export Clause. Appellant cites *Washington Stevedoring* in support of this position. There, the Court

noted that two distinctions existed between that case and *Michelin:* the tax in *Washington Stevedoring* occurred while the goods were in transit and the tax did not fall on the goods themselves but on the service of loading and unloading them. The Court upheld the tax despite these distinctions, holding that the *Michelin* analysis applies even where the goods are in transit as long as the tax is indirect and "falls upon a service distinct from the goods and their value." 435 U.S. at 757, 98 S.Ct. at 1403, 55 L.Ed.2d at 701–702. The Court explicitly left unanswered the question of whether the *Michelin* analysis applies to *direct* taxes on imports or exports in transit. 435 U.S. at 757, fn. 23, 98 S.Ct. at 1403, fn. 23, 55 L.Ed.2d at 701–702, fn. 23.

■ We disagree with appellant's argument for a bifurcated test and hold that the *Michelin* analysis indeed applies to the facts of this case. While we agree that the Supreme Court has expressly reserved a decision on whether *Michelin* applies to direct taxes on exports in transit, we disagree with appellant's contention that such a tax is involved in the instant case. We reach this conclusion for the simple reason that Arizona's transaction privilege tax is not a direct tax upon the goods appellant sells. Rather, it is a tax directly and specifically on appellant for the privilege of conducting business within the State of Arizona.[2] Such privilege or license taxes are generally termed "indirect taxes." *See e.g. Camden Fire Ins. Ass'n v. Johnson,* 42 Cal.App.2d 528, 109 P.2d 447, 449 (1941) (gross premium tax on insurance companies for privilege of doing business in state is an "indirect" tax); *Roberts v. City of Baton Rouge,* 236 La. 521, 108 So.2d 111, 121 (1958) ("the terms 'excise tax,' 'license tax' and 'privilege tax' are synonymous and are used interchangeably to the extent that they are all 'indirect taxes' which are imposed upon the acts of persons"); *General*

*American Transp. Corp. v. Limbach,* 15 Ohio St.3d 302, 473 N.E.2d 814, 818 (1984) ("an excise tax is one levied on a privilege and not one levied directly against the property"); *Madison Suburban Utility Dist. v. Carson,* 191 Tenn. 300, 232 S.W.2d 277, 280 (1950) ("an indirect tax is a tax upon some right or privilege"). In the case of Arizona's transaction privilege tax, the volume of goods sold or receipts taken is merely the measure on which the amount of the privilege tax is based. The goods themselves are not taxed. Arizona's transaction privilege tax thus only indirectly touches appellant's export sales and, for purposes of Import-Export Clause analysis, we see no distinction between it and the tax upheld by the Supreme Court in *Michelin* which included the petitioner's imports inventory in calculating the total tax due. The fact that appellant's goods are allegedly in transit at the time of taxing, therefore, is irrelevant to our holding that *Michelin* applies here since no direct tax on the goods is involved. *See Washington Stevedoring,* 433 U.S. at 758, 98 S.Ct. at 1403, 55 L.Ed.2d at 701–702.

■ Having thus determined that the *Michelin* analysis applies to this case, we now turn to the question of whether applying Arizona's transaction privilege tax to appellant's export sales creates an invalid impost or duty under the Import-Export Clause. Under the *Michelin* and *Washington Stevedoring* cases, a state tax on exports is not an impermissible impost or duty as long as it does not:

1. interfere with United States foreign policy, or

2. create conflicts and trade barriers between the states.

*See also, Duty Free Shoppers, supra,* at 736.

■ We find that Arizona's transaction privilege tax meets the above requirements

---

**2.** Appellant continuously refers to the transaction privilege tax at issue here as a "sales" tax. In doing so, it confuses two dissimilar types of taxes, since we have repeatedly held that a

transaction privilege tax is not a "sales" tax. *See e.g., City of Phoenix v. West Publishing Co.,* 148 Ariz. 31, 712 P.2d 944 (1985, Ct.App.)

and is therefore constitutionally permissible. It is not argued that the tax interferes with any express foreign policy toward the government of Mexico. Nor can the tax possibly create conflict or barriers between Arizona and her sister states since none are involved in the slightest way with appellant's export business. We find, rather, that the tax is purely a domestic, intrastate exaction properly imposed on appellant in return for appellant's fair share of the benefits and protection afforded to its business by the State of Arizona.[3]

## II.

 The issue of whether the Department abused its discretion by reversing its position on appellant's tax liability is settled by our finding that *Michelin* and its progeny have supplanted *Richfield* as the proper standard. *Michelin* was decided in 1976, well after the Department's predecessor, the State Tax Commission, wrote the February 26, 1973 letter to appellant stating that appellant's export sales were exempt from the privilege tax. Prior to this time, the rule in *Richfield* was clearly the law and completely barred any tax based upon such sales. However, *Michelin* and *Washington Stevedoring* worked a fundamental change in the law as it existed when the State Tax Commission stated its position in the 1973 letter. The Department, therefore, acted properly in adjusting its position accordingly.

## III.

As a final matter, the Department has requested an award of attorney's fees pursuant to A.R.S. § 12–341.01(C) contending that this appeal is frivolous and that it was not filed in good faith. In the exercise of our discretion, the request is denied.

Affirmed.

GREER, P.J., and HAIRE, J., concur.

---

3. We note that neither party to this appeal has raised an issue as to the reasonableness of this tax as it relates to the state's costs in providing such benefits and protection to appellant.